UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LAWRENCE HARRIS | CIVIL ACTION |
| VERSUS | NO. 08-4769 |
| WARREN RILEY, POLICE SUPERINTENDENT | SECTION "I" (2) |

**REPORT AND RECOMMENDATION**

Plaintiff, Lawrence Harris, filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983, while he was a prisoner incarcerated in the Orleans Parish Prison system ("OPP") in New Orleans, Louisiana. Harris sued New Orleans Police Superintendent Warren Riley, alleging that on September 3, 2008, he was falsely arrested and imprisoned by police officers who illegally entered his residence and damaged property during the incident. He seeks monetary damages. Record Doc. No. 1 (Complaint at ¶'s IV and V). Harris was subsequently released from incarceration. Record Doc. No. 4 (plaintiff's notice of change of address).

On February 19, 2009, I conducted a conference in this matter. Participating were plaintiff pro se, who appeared in person, and James Mullaly, Assistant New Orleans City Attorney and counsel for defendant. Plaintiff was sworn and testified for all purposes permitted by <u>Spears v. McCotter,</u> 766 F.2d 179 (5th Cir. 1985), and its progeny.

Following the hearing, defendant filed a motion for summary judgment. Record Doc. No. 13. In his motion, which is supported by an affidavit and various exhibits,

Superintendent Riley argues that plaintiff fails to state a cognizable claim against defendant, in either his individual or his official capacity, and that plaintiff cannot establish his constitutional claims because probable cause supported the actions of the police officers. Plaintiff filed a timely written opposition, Record Doc. No. 15, consisting of his own sworn statement, which basically reiterates the sworn testimony provided at the February 19th hearing, which I have also considered, together with his other written submissions in the record, all in opposition to defendant's motion.

Considering the written submissions of the parties, the record and the applicable law, and for the following reasons, IT IS RECOMMENDED that defendant's motion for summary judgment be GRANTED and that plaintiff's complaint be dismissed with prejudice.

## THE RECORD

During the February 19, 2009 <u>Spears</u> hearing, plaintiff testified that his claims all arise from an incident involving New Orleans police officers that occurred in the immediate aftermath of Hurricane Gustav on September 3, 2008. Harris confirmed that he asserts three (3) kinds of claims arising from the incident: (1) that his residence was unlawfully entered by New Orleans police officers; (2) that he was falsely arrested and imprisoned; and that (3) the private property of his landlord was damaged.

Harris testified that at the time of the incident, "I was at home with two of my guests," at 416 S. Broad Street in New Orleans. He identified his two guests as James Keith and Andrew Scott. Harris testified that the incident occurred at about 8:00 a.m. "We were inside eating breakfast when we heard a noise at the side door," he said. "It flew open and some officers had kicked the door in. They came in, went to searching the house, then they escorted us out the building and put us into a police unit."

Harris said the police officers did not have a search warrant. He estimated that about five or six officers were at the scene, but he did not know any of their names. He said the officers searched the house. Asked if he was renting the home where the incident occurred, Harris testified that he was "a live-in, a caretaker like, staying there, taking care of the place." He identified the owner of the property as Lucius Robar.

Asked if he was arrested, Harris testified that he was escorted from the building and put in a police unit. He said, "they drove us down to the corner across the street from a crime that was in progress," where they sat in the police car for 25 or 30 minutes. Harris testified that he was then taken by the officers to Central Lockup at OPP and booked.

Harris testified that the incident occurred right after Hurricane Gustav had passed through the New Orleans area. He clarified that New Orleans police officers took him in the police car from his residence to an area where looting was apparently occurring.

3

He testified that once he arrived at Central Lockup, he was charged with looting and damage to state property. He stated that he remained in jail for 62 days, when the charges were not accepted and he was released. Harris testified that he appeared before a magistrate judge for a bond hearing shortly after his arrest, and he was advised of the charges against him. He stated that he was unable to post the bond, so he remained in jail for 62 days and then was released.

Harris testified that he was not physically injured during the incident. He stated that his damages were the 62 days he spent in jail, and the pain, suffering, anxiety and mental anguish resulting from his false incarceration.

Asked about the allegation in his written submissions concerning "damage to private property," Harris testified that his own property was <u>not</u> damaged but that the property that was damaged was the building belonging to his landlord. He stated that his guests, Scott and Keith, were also incarcerated with him on similar charges and were witnesses to the incident.

Harris stated that when he was taken by the police officers to the scene of the alleged looting, Superintendent Riley was personally at that scene. He alleged that Superintendent Riley "was in control of the operation." He clarified that Superintendent Riley did not personally arrest him, but that New Orleans police officers who worked under his supervision had made the arrest. Harris thought that one of the arresting

4

officers was a woman named Riley or O'Reilly, but he could not be certain. He stated that he had a copy at his home of some sort of booking document concerning the incident, and I invited him to submit it to the court, but he has not done so.

He clarified that he did not intend to sue Orleans Parish Criminal Sheriff Marlin Gusman in this matter, but only Superintendent Riley. On cross-examination, he stated that he is sometimes referred to by the nickname "Twin" because he has a twin brother.

In support of his motion, defendant has submitted various exhibits, including the affidavit of New Orleans Police Detective Orlynthia White, verifying various police reports and arrest records concerning the subject incident and copies of the New Orleans Mayor's "Proclamation of Hurricane Emergency" and "Amended Mandatory Evacuation" order in effect at the time of the subject incident. The material facts established by defendant's evidence concerning the basis for plaintiff's arrest, which are unrefuted by anything included in plaintiff's written submissions or testimony, may be summarized as follows: On the date of plaintiff's arrest, the City of New Orleans was under mandatory evacuation and related emergency orders as a result of the approach, passage and immediate aftermath of Hurricane Gustav. New Orleans police officers patrolling during the emergency were flagged down at 342 S. Broad Street by a person identified as "Mr. Charles" reporting a burglary and/or looting at a small business. At the scene, the officers observed a pried open storm shutter and certain merchandise in the opening and

heard movement inside the building. The officers commanded that the persons inside the business come out. One suspect identified as Jerome Harris surrendered himself by coming out of the pried open window. A second suspect identified as Debra Edwards attempted to flee the scene but was apprehended. Both were arrested when the owners of the business were contacted by officers and told the officers that no one had permission to be inside their shuttered business during the hurricane emergency. "The arrested subject Jerome Harris advised officers that subjects James Keith, Andrew Lee Scott and Lawrence Harris (who (sic) Jerome Harris indicated was his twin brother) were also inside of the Business at 342 S. Broad Street, but when they heard the police sirens they fled on foot with several items to 416 S. Broad Street." The officers then proceeded to 416 S. Broad Street, where they found the three men previously identified by Jerome Harris, including his twin brother, plaintiff, and arrested them based on the information previously provided by Jerome Harris and the business owners. The suspects, including plaintiff, were then taken to Central Lockup and charged. Record Doc. No. 13-4 (defendant's exhibits 1 and "A" in globo).

## **ANALYSIS**

I. STANDARDS OF REVIEW

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal

basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182. The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but it is not required

to negate elements of the nonmoving party's case. Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)); Edwards v. Your Credit, Inc., 148 F.3d 427, 431 (5th Cir. 1998) (citing Celotex, 477 U.S. at 323).

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. National Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of its claim. Id. (citing Celotex, 477 U.S. at 321-23). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex, 477 U.S. at 323; accord Capitol Indem. Corp., 452 F.3d at 430.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards, 148 F.3d at 432. "'We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.'" Badon v.

8

R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis in original)). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" National Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little, 37 F.3d at 1075 (quotation omitted) (emphasis in original).

## II. ILLEGAL ENTRY AND SEARCH

As an initial matter, I address plaintiff's standing to challenge the warrantless entry and search of the subject property. Accepting plaintiff's testimony as true for present purposes, Harris was living at 416 S. Broad Street with the owner's permission. Capacity to claim the protection of the Fourth Amendment depends upon whether the person claiming the protection has a "legitimate expectation of privacy in the invaded place," that is, a "subjective expectation of privacy . . . that society is prepared to recognize as reasonable." Minnesota v. Olson, 495 U.S. 91, 95-96 (1990) (quotations omitted). A person's "status as an overnight guest is alone enough to show that he had

9

an expectation of privacy in the home that society is prepared to recognize as reasonable." Id. at 96. Thus, the United States Supreme Court in Olson held that Olson, who was arrested without a warrant while an overnight guest in another person's apartment, could claim the protection of the Fourth Amendment. See also Rakas v. Illinois, 439 U.S. 128, 141-42 (1978) (citing Jones v. United States, 362 U.S. 257, 267 (1960)) (arrestee who had been staying in friend's apartment could challenge allegedly unlawful search of apartment that led to his arrest). These cases establish that Harris has standing to challenge the officers' entry and search of the S. Broad Street property without a warrant.

A finding of standing alone does not end the inquiry. "[I]f probable cause exists, no warrant is required to apprehend a suspected felon in a public place." Steagald v. United States, 451 U.S. 204, 221 (1981). "A warrantless intrusion into an individual's home is presumptively unreasonable unless the person consents or probable cause and exigent circumstances justify the encroachment." United States v. Jones, 239 F.3d 716, 719 (5th Cir. 2001) (citing Steagald, 451 U.S. at 211; Payton v. New York, 445 U.S. 573, 586 (1980)) (emphasis added).

Whether exigent circumstances exist is a fact question. Jones, 239 F.3d at 719. Exigent circumstances "include hot pursuit of a suspected felon, the possibility that

10

evidence may be removed or destroyed, and danger to the lives of officers or others." United States v. Richard, 994 F.2d 244, 247-48 (5th Cir. 1993). The Fifth Circuit uses

> the following non-exhaustive list of factors to assess whether an exigency justifies a warrantless search:
>
> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant;
>
> (2) the reasonable belief that [evidence] is about to be removed;
>
> (3) the possibility of danger to the police officers guarding the site of [evidence] while a search warrant is sought;
>
> (4) information indicating that the [suspects] are aware that the police are on their trail; . . . .

Jones, 239 F.3d at 720 (citations omitted).

Even accepting plaintiff's testimony as true for present purposes, both probable cause and exigent circumstances were present when the officers entered the property, searched it and arrested plaintiff. Thus, Harris cannot prevail on his false arrest and false imprisonment claims as a matter of law, and summary judgment in defendant's favor is appropriate.

III. FALSE ARREST AND IMPRISONMENT

To succeed on a claim of false arrest in violation of either the Fourth Amendment or under state law, plaintiffs must establish that defendants did not have probable cause to make an arrest. Probable cause exists when the facts available at the time of the arrest

would support a reasonable person's belief that an offense has been or is being committed and that the individual arrested is the guilty party. United States v. Raborn, 872 F.2d 589, 593 (5th Cir. 1989); Tabora v. City of Kenner, 650 So. 2d 319, 322 (La. App. 5th Cir. 1995); Sorenson v. Ferrie, 134 F.3d 325, 328 (5th Cir. 1998) (citation omitted); Wells v. Bonner, 45 F.3d 90 (5th Cir. 1995). Under state law, probable cause exists "when the detaining officer has articulable knowledge of particular facts sufficient to reasonably suspect the detained person of criminal activity." Tabora v. City of Kenner, 650 So. 2d 319, 322 (La. App. 5th Cir. 1995) (citing State v. Buckley, 426 So.2d 103 (La. 1983); State v. Franklin, 598 So.2d 1147 (La. App. 1st Cir. 1992)).

To establish a claim for false imprisonment under federal law, plaintiff must prove (1) an intent by defendant to confine him, (2) acts resulting in confinement, (3) plaintiff's consciousness of confinement or resulting harm, and (4) the deprivation of a constitutional right, such as the right not to be arrested or detained without probable cause. A plaintiff seeking recovery for false imprisonment under federal constitutional law must establish that defendant's misconduct exceeds mere negligence. Brown v. Bryan County, 67 F.3d 1174, 1180, 1181 (5th Cir. 1995); Sanders v. English, 950 F.2d 1152, 1159 (5th Cir. 1992); Simmons v. McElveen, 846 F.2d 337, 339 (5th Cir. 1988).

To succeed on a claim of false imprisonment under Louisiana law, plaintiff must show that he was detained unlawfully. Detention is unlawful if it is made without color

of legal authority. Thus, false imprisonment occurs when an arrest is made either without probable cause, without any legal process or warrant, or under a warrant that is null and void upon its face. Winn v. City of Alexandria, 685 So. 2d 281, 283 (La. App. 3d Cir. 1996); Slaydon v. Dep't of Wildlife & Fisheries, 636 So. 2d 1151, 1152 (La. App. 3d Cir. 1994); Hays v. Hansen, 692 So. 2d 3, 5 (La. App. 4th Cir. 1997); Patin v. Duplessis Pontiac-Buick-GMC, 632 So. 2d 790, 792 (La. App. 1st Cir. 1993); Tabora v. City of Kenner, 650 So. 2d 319, 322 (La. App. 5th Cir. 1995) (citing State v. Buckley, 426 So. 2d 103 (La. 1983).

The test for reasonableness under the Fourth Amendment requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. Graham v. Connor, 490 U.S. 386, 396 (1989). The question is whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. Id. at 397.

In the Fifth Circuit, a court's "determination concerning probable cause is guided by the Supreme Court's mandate in Illinois v. Gates: We look to the totality of the circumstances to determine whether probable cause, or in this case arguable probable cause, existed. We are mindful of the notion that 'probable cause is a fluid concept –

turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules.'" Mendenhall v. Riser, 213 F.3d 226, 231 (5th Cir. 2000) (citations omitted). A later dismissal of charges, or even a subsequent failure of a court to find probable cause, is not determinative. "The law charges us with determining the reasonableness of the actions taken in light of the cause that existed <u>at the time of arrest</u> . . . . 'whether [an] arrest [is] constitutionally valid depends in turn upon whether, <u>at the moment the arrest was made</u>, the officers had probable cause to make it – <u>whether at that moment</u> the facts and circumstances within their knowledge and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense.'" Id. at 231 (citations omitted) (emphasis in original).

Moreover, in the Fifth Circuit, "[o]ur case law, following the Supreme Court, makes clear that probable cause to search is no different than probable cause to arrest." Id. at 235.

In the instant case, New Orleans police officers had ample probable cause to arrest Harris on looting and/or burglary charges in the immediate aftermath of Hurricane Gustav on September 3, 2008. The affidavit and police reports submitted in support of the defense motion establish that plaintiff's twin brother was apprehended in the act of burglarizing and/or looting a nearby business on that date. The defense evidence also

establishes that Harris's twin informed officers that plaintiff had also participated in the unlawful entry, but had fled the scene with some of the looted goods upon hearing police sirens. Plaintiff's brother told the officers where his twin brother could be located at a nearby address, where officers in fact found plaintiff and two other suspects shortly thereafter. Under these circumstances, it is clear that the police officers had ample probable cause <u>at the time of the arrest</u> both to arrest plaintiff and to search the residence. The law is clear that the subsequent dismissal of the charges against Harris does not vitiate the existence of probable cause at the time of the incident.

It is also clear that exigent circumstances existed to support both plaintiff's arrest and the ancillary search. At the time of the incident, the City of New Orleans was under a mandatory evacuation order and other emergency circumstances brought on by the passage of Hurricane Gustav. One suspect was seen by officers fleeing from the scene of the break-in at 342 S. Broad Street, where plaintiff's brother was arrested. The information that the arresting officers were provided by plaintiff's brother was that plaintiff and other suspects had also fled the scene of the original break-in and looting with some of the looted goods upon hearing police sirens. Thus, it was reasonable for the arresting officers to conclude that the arrest of plaintiff was urgent, that evidence may have been removed, that there was danger in delaying the arrest and search while a

warrant was sought, and that Harris and other suspects were aware that police were on their trail.

The undisputed material facts establish that there was probable cause to support both the arrest and the search about which plaintiff complains in this case. Under these circumstances, it is clear that defendant is entitled to judgment dismissing plaintiff's false arrest and false imprisonment claims as a matter of law.

IV. DAMAGE TO PROPERTY

Harris also asserts a claim that property was damaged as a result of the actions of the New Orleans police officers. Specifically, he alleges that the home in which he was residing, which belonged to his landlord, not himself, was damaged. Harris conceded in his testimony that none of his personal belongings were damaged. Construed broadly, these allegations may constitute a complaint that Harris was deprived of his property in violation of his due process rights. However, plaintiff fails to state a cognizable Section 1983 claim in this regard, and his claim must be dismissed for several reasons.

First, in deciding whether state action has violated an individual's right to due process, the court must address two questions: "whether the state action has deprived the individual of a protected interest–life, liberty or property," and if so, "whether the state procedures available for challenging the deprivation satisfy the requirements of due process." Augustine v. Doe, 740 F.2d 322, 327 (5th Cir. 1984); accord Neuwirth v.

Louisiana State Bd. of Dentistry, 845 F.2d 553, 556 (5th Cir. 1988); Cuellar v. Texas Employment Comm'n, 825 F.2d 930, 934 (5th Cir. 1987).

The United States Supreme Court has consistently ruled that a state actor's random and unauthorized deprivation of a person's property, whether negligent or intentional, does not result in a violation of due process rights if the State provides an adequate post-deprivation remedy. Alexander v. Ieyoub, 62 F.3d 709, 712 (5th Cir. 1995) (citing Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)); accord Wilson v. Holt, 158 Fed. Appx. 546, 2005 WL 3420898, at *1 (5th Cir. 2005). No cause of action lies under Section 1983 if state law provides an adequate post-deprivation remedy. See Quickie Chickie, Inc. v. Sexton, 194 Fed. Appx. 259, 2006 WL 2460909, at *1 (5th Cir. 2006) (corporation's Section 1983 challenge to allegedly illegal seizure of its immovable property resulting from Sheriff's execution of writ of sequestration was properly dismissed; plaintiff failed to show that it did not have adequate post-deprivation remedy under Louisiana law).

Plaintiff's state law remedy for the alleged negligent or intentional deprivation of his property lies in a conversion or other tort suit for damages in state court. Because no constitutional violation has been alleged, his complaint in this court fails to state a claim for which relief may be granted pursuant to Section 1983. Ordinarily, Harris would

17

remain free to pursue his claim concerning damaged property in state court against the state officials who allegedly caused it.

In this case, however, Harris has no claim whatsoever because none of <u>his</u> property was damaged. "[C]ausation is an element of a section 1983 claim; [defendants'] actions must have actually caused the deprivation . . . of which [plaintiff] complains." <u>Hart v. O'Brien</u>, 127 F.3d 424, 446 (5th Cir. 1997), <u>abrogated in part on other grounds as recognized in</u> <u>Spivey v. Robertson</u>, 197 F.3d 772 (5th Cir. 1999). Similarly, causation of actual damage to plaintiff's property is an essential element of any state law tort claim for damage to property. <u>Dixie Drive It Yourself Sys. v. American Beverage Co.</u>, 242 La. 471, 482-83, 137 So.2d 298, 302 (1962)). Under no circumstances can Harris establish the causation element of either a Section 1983 or a state law tort claim because it is undisputed that <u>none</u> of <u>his</u> property was damaged by any action of defendant or any officer working under his supervision.

## RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that defendant's motion for summary judgment be GRANTED and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10)
18

days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __5th__ day of May, 2009.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE